STATE, PENNSYLVANIA RAILROAD COMPANY, PROSECUTOR, v. SAMUEL R. WETHERILL, COLLECTOR OF THE TOWNSHIP OF SPRINGFIELD, IN THE COUNTY OF BURLINGTON.

The first section of the act of April 2d, 1873, for the taxation of railroad corporations, does not enlarge or restrict the power of companies subject to its provisions, to acquire or hold lands for roadway. Such companies are exempt from local taxation upon their road-width, as allowed by their acts of incorporation, and all structures thereon suitable and proper in use for the purposes of the corporation, and not otherwise used. Upon all lands outside such road-bed, intermediate the *termini*, they are subject to local taxation.

On *certiorari* to review assessment of tax.

Argued at November Term, 1878, before Justices VAN SYCKEL, KNAPP and DIXON.

For the plaintiff, *P. L. Voorhees.*

State, Penna. R. R. Co., pros., v. Wetherill.

The opinion of the court was delivered by

KNAPP, J.    The tax complained of was assessed in 1878, against the Columbus, Kinkora and Springfield Railroad Company, upon parcels of land situate at Jobstown and Juliustown stations, on the line of the company's railroad and in its ownership.    The prosecutor operates the road under lease from the owner.    The land assessed at each station includes the road-bed, which, at Juliustown, runs diagonally over the lot, which is nearly a square.    On either side of the road-bed there is left a triangular lot, they together containing about two-tenths of an acre, outside of a road-width of one hundred feet, and three-tenths outside of a sixty-six feet width.    In a road-width of one hundred feet will be included depot buildings on one side, and coal sheds on the other; both of those buildings will be outside, or nearly so, of sixty-six feet.

At Jobstown the roadway runs longitudinally with the tract occupied by the company, which tract is one hundred and ten feet wide at the station, and narrowing towards the south by converging lines to eighty-eight feet in width, in a distance of eight hundred and fifty feet.    The tracks, depot building, and all other structures are within a width of sixty-six feet, measuring from the north line of the tract.

The prosecutor claims exemption from taxation for a roadway of one hundred feet in width, and all the structures upon it, under the provisions of the first section of the act of April 2d, 1873, entitled "An act to establish just rules for the taxation of railroad corporations, and to induce their acceptance and uniform adoption," (*Rev.*, *p.* 1166, § 126,) which enacts in substance that railroad companies, occupying and using railroads in this state, shall pay county and municipal tax " upon all the real property by them occupied, used or owned for the purposes of their road or otherwise, excepting their main stem or road-bed and track, not exceeding one hundred feet in width."

By the sixth section of the act incorporating the company, (*Pamph. L.*, 1866, *p.* 882,) authority is given to lay out and construct a railroad, " *not exceeding* sixty-six feet in width,"

between the terminal points; and by the tenth section the company may hold other lands at the *termini*, and at all intermediate stations, not exceeding, at each, two acres. The fourteenth section provides for the payment of a state tax of one-half of one per centum on the cost and equipments of the road, or such part as may be in operation, "and such other taxes as may be assessed from time to time by a general law applicable to all railroads over which the legislature shall have power for that purpose at the time of the passage of such law or laws, * * provided that no other tax or impost shall be levied or assessed upon said company."

Under these provisions, and until the passage of a general law, such as mentioned, the company would rightfully hold its road-bed to the width of sixty-six feet, and land at each station, not exceeding two acres, in use or in present contemplation of use, for the purposes of its incorporation, exempt from ordinary taxation. *State, M. & E. R. R. Co., pros.*, v. *Haight*, 6 *Vroom* 41; *State, C. & M. R. R. Co., pros.*, v. *Collector*, 9 *Vroom* 270.

But the act of 1873, above referred to, furnishes the rule of taxation for this company. Under this enactment there is no exemption for the real estate of the company, held at stations intermediate the *termini* outside the authorized roadway, although held for necessary use and under chartered right. Their "main stem or road-bed and track" only is withheld from municipal taxation. In the charter of this company, as we have seen, the width of the road which it is authorized to construct and operate is not to exceed sixty-six feet. I have found no legislation, if such exist, authorizing any increased width, unless, as claimed by the prosecutor, such authority springs out of the provision in the first section of the act of 1873. I am unable to see in that a legislative intention to confer or enlarge corporate powers. The object of the act, as the title tersely expresses it, is to establish rules for the taxation of railroad companies, and not to confer upon them new corporate powers and privileges. The design of the whole act seems the opposite of granting franchises. It regulates the

mode in which railroad companies, vested with public rights and franchises, shall, on account of them, bear certain shares of the public burden. The language in the exemption is, " their road-bed, &c., not exceeding one hundred feet in width." This means their legally authorized road-bed, of whatever width it be, not greater than one hundred feet—the excess, and only the excess, shall be taxable. What is the road-bed of each, its location, dimensions, &c., can be determined only by looking into the several grants. The different widths of specially chartered roads were established upon the needs of each as they, in legislative judgment, existed. A purpose to reduce them all to a common rule or standard, involving enlargement of the powers of some and restriction of others, should find its expression in plain terms, and we should look for them in connection with kindred legislation. To infer such purpose from this language, which is appropriate to define and limit the extent of exemption from tax, found in an act embodying a scheme of railroad taxation, could hardly be justified. The act was not intended to regulate the width of railways, or to enlarge or restrict, in that respect, the rights conferred by charter upon railroad companies coming under its provisions. Touching the power to acquire and hold lands for their corporate purposes, it leaves them where it finds them.

The exemption of this company, in my opinion, was limited to the width of sixty-six feet, as provided in their charter, and the property outside of that limit was rightly subject to taxation. The assessment was wrong in including the roadway, but the testimony taken under the rule shows that, at Juliustown station, the property outside of the line of sixty-six feet has a value equal to the amount assessed upon the whole property there, so that this part of the assessment should not be disturbed. It is within the rule laid down by this court in *State* v. *Collector of Jersey City*, 6 *Vroom* 178. At Jobstown the value of the taxable land is less than the assessment. All the buildings and improvements at this point occupy a width not exceeding sixty-six feet, measured from the northerly line of the assessed

property. In the absence of any testimony showing the legal location of the road, we must infer from this use of the property that the proper road-bed is along that side of the company's land where its appropriate works are constructed. This would leave a strip liable to taxation, containing about two-thirds of an acre, not exceeding in value $100. The defendant claims that there should be added to this, three of the buildings erected on the roadway, for the reason that the company has let out those buildings for uses not connected with the objects and purposes of its incorporation, under the rule declared in the case of *Cook, Coll'r*, v. *State*, 4 *Vroom* 474.

But I think that the application of this rule is not justified by the facts proved. All these buildings are suitable and proper in the company's legitimate business, (*State, N. J. R. R. Co., pros.,* v. *Hancock*, 6 *Vroom* 537,) and presumably were so used, until the contrary be shown. What was proved is, that a car-house was used to shelter a car belonging to one of its customers. The company had, in my judgment, as clear a right to contract to furnish housing for the car of another when at its depot, and to receive payment therefor, as it had to carry the car over its road for pay. The proof offered to show that the coal-house was let to a stranger for other than the company's use was an admission of an officer or agent of the company, made, not in the transaction of any business, or in the performance of any duty connected with the matter. This proof was taken under objection. This was not proof to bind the prosecutors.

The proof respecting the use of the blacksmith-shop is equally unsatisfactory. All these buildings, in their appropriate uses by the company, are exempt from taxation. To withdraw them from the exemption because used for purposes outside of the company's proper functions, the facts should not, as here, be left in doubt.

I think the tax in this case should be affirmed as to $700 of the valuation. As to the remainder, it should be set aside, without costs.